MARY F. MADISON

*v.*

JOHN TYLER MADISON *et al.*

*Opinion filed December 16, 1903—Rehearing denied February 4, 1904.*

1. REAL PROPERTY—*upper stories of a building may be independent real estate.* The upper stories of a substantially erected building, which are conveyed by deed, without restriction, by the owner of the soil and the lower stories, together with the right to use hallways and stairways leading thereto, constitute real estate, independent of the soil and lower stories, and the owner thereof has all the rights of an owner of land.

2. TRUSTS—*when resulting trust arises.* A resulting trust in favor of a wife is established by evidence that the land was obtained by trading other land belonging to her, but the title was taken, without her knowledge, in the name of her husband, who subsequently promised to build a house for her on the lot and then convey the title to her, but became insane and died before the conveyance was made, although he had begun building the house.

3. SAME—*what does not bar right to claim resulting trust.* The right of a wife to claim a resulting trust in property to which her husband held the legal title is not barred by the fact that she inventoried the land as a part of the husband's estate when appointed as his conservatrix, where the rights of no third parties were prejudiced by such action.

4. LACHES—*relationship of parties has a bearing upon the question of laches.* The relationship of the parties and the fact that they are members of the same family has an important bearing upon the question of *laches*, a delay under such circumstances not being so strictly regarded as where the parties are strangers.

5. SAME—*when delay in bringing suit is excused.* Delay in bringing suit is excused where there is positive proof that the defendants have always recognized the complainant's rights.

6. JUDICIAL SALES—*when sale by conservatrix is not colorable.* A sale by a conservatrix made under an order of the county court, all proceedings being regular, is valid, and not merely colorable, notwithstanding the purchaser and the conservatrix subsequently entered into an agreement with reference to a re-conveyance of the lot.

APPEAL from the Circuit Court of Douglas county; the Hon. W. G. COCHRAN, Judge, presiding.

ECKHART & MOORE, for appellant.

EDWARD C. CRAIG, for the guardians *ad litem,* James W. Craig and John H. Chadwick.

Mr. JUSTICE WILKIN delivered the opinion of the court:

This is a bill for partition, filed in the circuit court of Douglas county by the appellant, as the widow of Harry Madison, deceased. The bill alleges that said Harry Madison died intestate, leaving no child or children nor descendants of a child or children, but leaving the appellant, Mary F. Madison, his widow, John Tyler Madison, a nephew, and Jennie Loose, a niece, as his sole heirs-at-law. The bill then describes certain real estate of which he died seized, and prays that the title to lots 9 and 10, in block 19, in the original town (now city) of Tuscola, Illinois, be declared in appellant, although the title was, at the time of his death, in said Harry Madison, and assigns as a reason for said prayer that the property was bought with the money of appellant and that she has a resulting trust therein.

The appellees John Tyler Madison and Jennie Loose, by their guardians *ad litem,* filed an answer to said bill, in which they deny that the said Harry Madison held this property in block 19, in said city, in trust for appellant, and further aver that before the death of the said Harry Madison he was adjudged insane and appellant was appointed conservatrix of his estate, and that she inventoried said property in block 19 as a part of his estate. The answer further avers that at the date of his death the said Harry Madison was, in addition to the property described in complainant's bill, seized in fee simple of the second and third stories of the brick building in Tuscola known as the Tuscola Opera House, and that the same was real estate, and prays that said real estate be partitioned between appellant and said appellees. Said answer further set forth that the said Harry Madison, during his lifetime, was seized in fee simple of the west half of lot 4, in block 25, in the original town

(now city) of Tuscola, except all that part lying west of the center line of the west wall of a certain building now standing on the west half of said lot, and that appellant, as conservatrix of the said Harry Madison, made a colorable sale of said last described piece of property, and that the same was in truth and in fact, at the date of the death of the said Harry Madison, his property, and prays that the same be partitioned among his heirs. A cross-bill was filed by said appellees, by their guardians *ad litem*, setting forth the above facts, substantially as stated in the answer, and asking affirmative relief in reference to the same.

The case was referred to the master in chancery to take the evidence and report his conclusions. He filed his report, in which he recommended that a decree be entered in accordance with the appellant's bill. Upon a hearing the chancellor overruled all of the exceptions to said report as filed by appellees, except as to the property known as the opera house. The master, in reference to that property, found that it was personal property and not real estate, and the chancellor held that it was real estate and was subject to be partitioned among the said heirs. The chancellor sustained the findings of the master in reference to all other matters and entered a decree accordingly. Appellant has appealed to this court, and assigns as error that part of the decree which holds that said opera house property is real estate and not personal property. Appellees, by their guardians *ad litem*, have filed cross-errors, which involve the property appellant contends was held in trust for her by the said Harry Madison at the date of his death, and also the property that appellees contend was sold by her as conservatrix.

The first question in the foregoing order to be determined is whether the opera house is real estate or personal property. The evidence shows that structure is a three-story brick building, built in a very substantial and permanent manner. The first story was built by the

owners of the fee in the lots and the second and third stories by the Tuscola Opera House Association. After the building was completed the owners of the fee conveyed, by deed, to said association, all of their right, title and interest in said second and third stories, with the right to use the hallways and stairways leading thereto, together with the box-office, and the ground in the rear, occupied by out-houses belonging to said building. In this deed there is no reservation or limitation, and no time stated when the rights of the grantee shall expire; nor are the rights of the respective parties otherwise specifically set forth than in and by said deed. Subsequently all of the right, title and interest of said opera house association was conveyed, by deed, to said Harry Madison.

Cases similar to the case at bar have been before this court, and while the facts are not exactly the same, yet we think the rules of law laid down in those cases correctly state the law applicable here. In the case of *Catlin Coal Co.* v. *Lloyd*, 176 Ill. 275, we held that coal and minerals in place, where the title thereto had been severed from the title to the surface, constitute land, and the owner thereof has all the rights of an owner of an interest in land. In the case of *Gillam* v. *Bird*, 49 Am. Dec. 381, it is decided, in conformity with the elementary principle, that the ownership of land is not confined to its surface, but extends indefinitely downwards and upwards. It includes not only the ground or soil, but everything which is attached to the earth, whether by course of nature, as trees and herbage, or by the hand of man, as houses and other buildings. A house, or even the upper chamber of a house, may be held separately from the soil on which it stands, and an action of ejectment will lie to recover it. In the case of *Knapp* v. *Jones*, 143 Ill. 375, we held, where an elevator was built upon the right of way of a railroad company under a lease for years, with a provision therein that the lessor might terminate such lease at any time upon sixty days' notice and that the

lessee might remove the building by him erected thereon at any time before the lease expired, that such building was a chattel real, and under our statute is classed as real estate, and we there cited Bouvier's Law Dic. title "Chattels Real;" 2 Blackstone's Com. 387; 2 Kent's Com. 245; 1 Washburn on Real Prop. chap. 1, sec. 17; *Griffin* v. *Marine Co.* 52 Ill. 130; *Conklin* v. *Foster*, 57 id. 104; *Kankakee Coal Co.* v. *Crane Bros. Manf. Co.* 28 Ill. App. 371; 13 Am. & Eng. Ency. of Law, (2d ed.) 594; *Dobschuetz* v. *Holliday*, 82 Ill. 371; *Willoughby* v. *Lawrence*, 116 id. 11.

From the above authorities it will be found that in determining the character or kind of property we must take into consideration all the facts and circumstances surrounding the transaction, the intention of the parties, the size and kind of building, the manner in which it is attached to the realty, and whether or not it can be removed without injury to the fee. In the case at bar the building was a substantial brick structure of three stories. It was evidently built with no intention of removing the two upper stories, and they could not be removed without greatly injuring, if not destroying, the building. No provision was contained in the deeds allowing the owners of said stories to remove them at any time. They were several times conveyed by deed, and were certainly subject to all the tests of real property and none of the tests applicable to personal property. The fee and the first story were charged with the support of the second and third stories, and we are of the opinion that said second and third stories were not personal property, but were real estate, and that said chancellor was not in error in so holding.

The next question is, whether there was a resulting trust in favor of appellant as to lots 9 and 10, in block 19, known in this record as the Daggett property. The evidence shows that in November, 1888, appellant and her husband were desirious of purchasing said property in controversy but were financially unable to do so. Ap-

pellant was the owner of certain property in Camargo, which she had received from her father, Joseph Connelly. Arrangements were made by which her father was to take the property in Camargo and in return buy for her the property in controversy. At the time this exchange was made, the deed to the Daggett property was made to the said Harry Madison, husband of appellant, without her knowledge or consent or without the knowledge or consent of her father. Afterwards they learned that the deed was made to the husband, and demand was made upon him to transfer it to appellant. This he neglected to do, but from time to time admitted that the property belonged to his wife and that her money had bought it, and he further stated that he would build her a modern, up-to-date house on the lot and then make her a deed for the whole thing. He never claimed adversely to her, but always acknowledged her as the owner, and started to carry out his intention to build a house on the lot, but before the plans were consummated he became insane and shortly afterwards died. We think the facts in this record bring the case clearly within the doctrine of resulting trusts. See *Corder* v. *Corder*, 124 Ill. 229; *Stephenson* v. *McClintock*, 141 id. 604; *Harris* v. *McIntyre*, 118 id. 275; *VanBuskirk* v. *VanBuskirk*, 148 id. 9.

Appellees, however, contend that appellant, by her long delay, has been guilty of *laches*, and that she is also estopped for the reason that she inventoried said lots as the estate of her husband. We do not think either of these contentions can be sustained. The mere fact that the lots were inventoried as a part of her husband's estate while he was still living should not bar her right to assert her claim to the property, the rights of no third party being thereby prejudiced. The evidence does not show that she has been guilty of *laches*. During all the time of her alleged *laches* there was positive evidence in existence that her husband at all times recognized her rights. *Laches* is governed largely by the facts and

circumstances surrounding each case. The rule is, that where positive evidence exists which proves that defendant has always recognized the plaintiff's rights, delay in bringing suit will be excused; and the relationship of the parties, and the fact that they are members of the same family, has an important bearing on the question of *laches,* and a delay under such circumstances is not so strictly regarded as where they are strangers. See 18 Am. & Eng. Ency. of Law, (2d ed.) 111; *VanBuskirk* v. *VanBuskirk,* 148 Ill. 9.

The final question is whether the alleged sale by appellant, as conservatrix, was colorable, only, or whether it conveyed the title to the purchaser, Rice. The evidence shows that the husband of appellant was insane for some years prior to his death and that appellant was without ready money to properly care for him. She applied to the county court for an order of sale of the west half of lot 4, in block 25, as above described. An order of sale was entered, and the lot in question was sold at public auction and purchased by the defendant Rice. A report of sale was made to the county court. Said sale was approved and a deed made to the purchaser. Afterwards a written agreement was entered into between the purchaser and appellant for the borrowing of $1000 and with reference to said lot being re-conveyed to the estate. It is contended by appellees that this agreement shows the sale was made for the benefit of appellant or the estate, and that the sale to Rice was only colorable. We do not think the contention is sustained by the evidence. The sale was made under an order of the county court. All of the proceedings were regular in form. The defendant Rice, by bidding at said sale, subjected himself to the jurisdiction of the court, and the court could have compelled him to have completed his sale, and by refusing so to do he would have been in contempt. (See *Chandler* v. *Morey,* 195 Ill. 596.) The mere fact that an agreement was subsequently entered into had no effect

upon the sale.   Said agreement was void, and if the appellant, as conservatrix of the estate, took security for the purchase price, she is liable to said estate for the amount of the sale.   (See *McCluskey* v. *McNeely*, 3 Gilm. 578.)   For these reasons the sale was valid and the title to said lot is vested in the purchaser, Rice.

We are of the opinion that the decree of the circuit court is correct in all of its findings, and the same is therefore affirmed.                                        *Decree affirmed.*