HOFTEIZER, Administrator, et al., Respondents, v. PRANGE, Executor, et al. (BOUWHUIS, et al., Appellants.)

HOFTEIZER, Administrator, et al., Appellants, v. PRANGE, Executor, et al., (BOUWHUIS, et al., Respondents.)

(186 N. W. 963.)

(File Nos. 4923, 4963.    Opinion filed March 1, 1922.    Rehearing denied April 10, 1922.)

1. **Appeal—Error—Separate Assignments of Error Necessary—Grouping of Assignments for Discussion Under Rule, Distinguished.**

    Assignments of error should be separately stated for each alleged error; such being the intention of Rule 4, encouraging grouping of assignments for purposes of discussion, "if they present a like question."

2. **Appeal—Error Re Admission of Evidence—Ample Competent Evidence, Effect Re Affirmance.**

    Where there is ample competent evidence in record, alleged errors in admission of evidence will not avail for reversal.

3. **Estates of Decedents—Trusts—Realty Purchased With Wife's Money, Title in Husband, Husband's Assurance That Property Would Go to Wife's Children, Subsequent Will to Husband's Heirs—Resulting Trust in Wife's Favor.**

    Where realty was purchased with the money of decedent's wife, the title being taken in husband's name, she having acquired this money during her marriage to her former husband; present husband having repeatedly assured her the property would eventually go to her children by former husband, such assurances being sometimes made when she objected to putting more money into the lands; he, after her death, having repeatedly stated he was going to leave the property to some or all of said children,. evidence tending to show also he intended making a will accordingly up to a few years before his death; held, in a suit·by said children and wife's grandchildren, against devisees, legatees and next of kin of decedent, that there was a resulting trust in favor of the wife, that decedent took the title subject to such trust.

4. **Limitations—Resulting Trust in Realty, Suit by Beneficiaries, Defense of Limitations, Laches—Open Repudiation By Trustee As Initiating Limitations and Rule Re Laches.**

    While the plaintiffs, children and grandchildren of one who in her lifetime and as the wife of decedent who held realty purchased with her money while title was taken in his name, under which title he held the property subject to a resulting trust in wife's favor—might have sued to have the property declared their own at any time after the mother died, as she

might in her lifetime have done in her own right, yet neither she nor her decedents were bound to do so in order to protect their rights; since, while such trust was not an express one, yet under the well settled rule, the running of the statute of limitations, as well as laches, begins at time when such trust is openly repudiated, or acts are done by trustee which are hostile to, or in fraud of, rights of beneficiaries under the trust, and of which they have actual knowledge, or of facts from which knowledge must be imputed to plaintiff; following Stianson v. Stianson, 40 S. D. 322. **Held,** further, that such resulting trust approaches more nearly to an express one than does a constructive trust, in that it rests upon a presumed intention (a constructive trust not being thus supported); and this presumed intention, on which a resulting trust rests, is the presumption that trustee intends to hold the property for benefit of his cestui que trust; which presumption holds until some act or deed by trustee evidences a different intent, i. e., a repudiation of such presumed intent.

5.  **Trusts—Resulting Trust in Realty—Possession, After Beneficiary's Death, Whether Repudiation of Intent to Hold For Her—Declarations That Property Would Go to Her Children, Whether Laches Barred Childrens' Rights—Rule—Trustee's Possession That of Co-tenant.**

     The fact that the husband, after death of his wife, who was beneficiary under a resulting trust in realty purchased with her money but title to which was in husband—retained possession after her death, he meanwhile not denying her rights but carrying to her children the idea that it mattered not where title was, as the property would eventually go to her children, did not in effect repudiate the trust so as to initiate against them the rule of laches re bringing suit to recover their rights in the property.  The fact that the parties were members of the same family bears importantly on question of laches, a delay under such circumstances not being regarded as strictly as where strangers are involved.  Nor was possession by such husband after wife's death, adverse to her children; he was a co-tenant with her, and as such entitled to possession, while as to the homestead part of the realty, he was entitled to exclusive possession and use for life.

6.  **Same—non-laches—Limitations, as Beginning When Trustee Died Leaving Will Disposing of Property to Others—His Possession Non-adverse.**

     Not only were the deceased wife's children not guilty of laches for not bringing suit before trustee's death, but the statute of limitations did not begin to run against them until he died leaving a will purporting to dispose of all the property in his possession to others; his possession was not adverse to her heirs.

7. **Trusts—Realty Purchased After Wife's Death, Non-proof of Purchase With Wife's Funds, Or With Proceeds of Trustee Land Use, Whether Findings Show Resulting Trust.**

Findings below, to effect that husband, after death of wife in whose favor there existed a resulting trust in other lands the title to which was in him, purchased other land, trial court refusing to find it was purchased with funds derived from property belonging to wife's estate, or with funds received by him from operation of trust lands, fails to support contention that he held the land last purchased charged with resulting trust in favor of wife's children.

8. **Trusts—Trustee Re Resulting Trust, Declarations Favoring Trust and Relieving Beneficiaries From Laches, Distinguished From Trustee's Agreement to Will Property to Them.**

While there might be such conduct and assurances on part of one holding title to realty subject to a resulting trust in favor of his wife with whose funds the property was purchased, as would excuse delay by wife's heirs in bringing suit to recover their rights therein, or as would prevent running of statute of limitations, yet such conduct or assurances might fall far short of creating an enforceable contract to will the property to them.

9. **Same—Wife's Heirs' Demand on Trustee For Division, Trustee's Promise to Will Them Property If Permitted to Retain Possession, Relied On, To Avoid Litigation, Whether Evidence Sustains Finding.**

Where heirs of deceased wife of a resulting trustee of realty demanded of him a division of two-thirds of the property to them they claiming he promised them that if allowed to retain possession, and use for life, and if no action were brought by them to have themselves declared owners of such interest, etc., he would will "all the property of which he died possessed" to them, and that they relied on such promise and so refrained from suing; held, that the testimony of two witnesses, one to the effect that soon after wife's death husband told him that "the Hofteizer boys" (some of said heirs) wanted to divide the property, but that he did not want it divided, and that they wanted "their share out of their mother's property," that he wanted to keep the property together while he lived and then "the boys" would get it, and that he intended to make John Hofteizer (one of said heirs) his administrator, that later he said he had told John to let it alone until he died, that the Hofteizers would get it; still later that husband told him he was making a will, that John was to be his administrator, spoke as though he "had made another will and had torn it up," that later witness asked him if he "had everything fixed up, that he told him he had made a will and that John was administrator, but witness was not positive whether he told him

what he had done with the property; the other witness, that husband told him the heirs (Hofteizers) were going to share alike, that he had made a will and "was going to give John Hofteizer $1500. ahead of the rest because he would be administrator," and that if he did not do that "they could go to law about it"—failed to sustain a finding of facts substantially to effect that husband agreed with heirs to will them the property; evidence not showing a binding agreement or from which to certainly determine what the agreement if any was, and nothing connecting any heirs save John with alleged negotiations.

Appeal from Circuit Court, Hamlin County.   Hon. ALVA E. TAYLOR, Judge.

Action by G. J. Hofteizer, as administrator of the estate of Jane W. Radstaak, deceased, and others, against G. J. Prange, as executor of the estate of Arend John Radstaak, deceased, and others, defendants; Jan Bouwhuis, E. H. Winklehorst, Garit Wilem Wisselink and others, impleaded with others as defendants; for judgment and decree adjudging plaintiffs to be owners of all the property claimed by defendants as the estate of Arend Radstaak, deceased.   Upon findings, the conclusions of law and judgment were for plaintiffs for an undivided two-thirds interest in certain lands, and for proceeds of certain crops grown thereon; from which judgment, and from an order denying a new trial, both parties appeal.   Affirmed.

*Loucks, Hasche & Foley,* for Plaintiffs.

*M. J. Russell,* and *Kirby, Kirby & Kirby,* for Defendants.

(3)   To point three of the opinion, Plaintiffs, and Respondents in Defendants' Appeal, and Appellants, cited: Cottonwood Bank v. Case, 25 S. D. 78; Luscomb v. Grigsby, 11 S. D. 408; Denney v. Schwabacher (Wash.), 132 A. S. R. 1140, 104 Pac. 137; Fideler v. Norton (Dak.) 30 N. W. 128; Harrison v. Harrison (Neb.), 113 N. W. 1042; Werre v. Northwest Thresher Co. (S. D.), 131 N. W. 721.

Defendants and Appellants, and Respondents in Plaintiff's Appeal, cited: Secs. 2011, 2266, 2290, Code 1919; First Nat. Bk. v. Mather, (S. D.) 137 N. W. 51; 36 Cyc. 692.

(4)   To point four, Plaintiffs, and Respondents in Defendants' Appeal, and Appellants, cited: 40 Cyc. 1070, 1071; 39 Cyc. 606; Pomeroy's Eq. Jur. Sec. 1456; Lloyd v. Kirkwood, 112 Ill. 329.

Defendants and Appellants, and Respondents in Plaintiff's Appeal, cited: 20 Cyc. 235; 39 Cyc. 635, 602.

WHITING, J. This action is in effect one on behalf of the children and grandchildren of one Jane W. Radstaak, against the devisees, legatees, and next of kin of one Arend John Radstaak. Throughout this opinion we will use the word "plaintiffs" as referring to those upon whose behalf this action was brought, and the word "defendants" as referring to those claiming adversely to plaintiffs. Plaintiffs sought to be adjudged the owners of all the property claimed by defendants as the estate of Arend John Radstaak.

Trial was to the court without a jury. Findings of fact, conclusions of law, and judgment were entered. The conclusions and judgment were in favor of the plaintiffs, the court adjudging that defendants held in trust for plaintiffs the title to an undivided two-thirds interest in 480 acres of land and the proceeds of the crops grown on such land since the death of Arend John Radstaak. From such judgment both parties appeal; and such appeals are now before us.

[1] Defendants assign as error certain rulings of the court in the admission of evidence and the insufficiency of the evidence to support the findings of the court. We cannot approve of the method adopted by defendants' counsel in presenting their assignments of error. The rules of this court as well as the statutes relating to assignments, contemplate assignments of error, and not an assignment of errors. While rule 4 (170 N. W. vii) encourages the grouping, for purposes of discussion, "of assignments if they present a like question," it was still intended that each alleged error should be separately assigned and its assignment given a number distinct from that of any other assignment. Numerous alleged errors, even though they may "present like questions," should not be grouped as one assignment.

[2] We have carefully considered all the alleged errors in admission of evidence, and we are satisfied that there is ample competent evidence to support findings warranting the judgment appealed from.

There is virtually no conflict in the evidence; and no useful purpose could be subserved by a lengthy review thereof.

This evidence related to matters extending over a period of nearly 50 years. As to some of the matters in issue, plaintiffs' lips were sealed because of statutes rendering their testimony incompetent. Plaintiffs were therefore compelled, to a great extent, to rely upon the recollection of neighbors as to transactions and circumstances scattered over this long period, including statements and admissions made by Arend John Radstaak.

The following facts are established by direct evidence or are fairly inferable from established facts or from proven statements and admissions of Arend John Radstaak. Jane W. Radstaak was at one time the wife of one John Hofteizer; and plaintiffs are their children and grandchildren. During Hofteizer's lifetime, he and his family lived in Wisconsin, where he owned considerable land. He also held a contract on several tracts of land in Kansas, to which state he eventually moved, and where he died about the year 1868. The widow returned to Wisconsin and there married Arend John Radstaak, a man without property or children and without near relatives in America. To this marriage no children were born. Arend John Radstaak, while he and his wife remained in Wisconsin, lived away from his family much of the time, and did little to help accumulate property. The lands in both Kansas and Wisconsin were eventually sold, and in 1891, upon the suggestion of Radstaak, he and his wife moved to South Dakota, where they at once bought 400 acres of land. The purchase price of this land was moneys derived from properties formerly owned by the wife. Another 80 acres was thereafter purchased and paid for by the wife. The title to all this land was taken in the name of the husband. The wife died in 1901. Radstaak, upon several occasions, assured his wife that all the property was eventually to go to her children; he made such assurances at times when she objected to putting more of her money into the property that stood in his name. After their mother's death plaintiffs sought a division of the land; and it may fairly be inferred, from the facts proven, that the reason why their claim to a division was not pushed was because of promises made to them that, if Radstaak were left in possession of all the property, he would will it all to plaintiffs. He stated several times after his wife's death that he was going to leave the property to some or all of plaintiffs; and there is some evidence of

statements by him to the effect that he had made a will leaving the property to plaintiffs. Statements made by him show that he undoubtedly fully intended to make such a will up to a few years before his death, when he made a trip to Holland, his motherland and the country where his near relatives lived.

[3] Under the above facts, Radstaak took the title to the 480 acres charged with a resulting trust in favor of his wife. Section 372, R. C. 1919; 39 Cyc. 138-142. Defendants contend that plaintiffs' right of action, if they ever had a right of action to have such trust declared in their favor, accrued upon the death of plaintiffs' ancestor, and that laches as well as the 10-year statute of limitations had barred such right of action when this action was brought. Furthermore, they contend that, even though it should be conceded that their ancestor originally held the property in trust for his wife, he long since acquired absolute title thereto, through adverse possession and the payment of taxes, under section 2291, R. C. 1919.

[4] While it is true that plaintiffs' ancestor might, at any time, have brought an action to have title to this land quieted in her; and likewise, after her decease, plaintiffs might, at any time, have brought such an action; it does not necessarily follow that either were bound to do so in order to protect their rights. This court, in Stianson v. Stianson, 40 S. D. 322, 167 N. W. 237, 6 A. L. R. 280, differentiated between express and constructive trusts, and announced as to express trusts.

"The rule is well settled that the running of statutes of limitation and laches begins at the time such trust is openly repudiated, or acts are done by the trustee which are hostile to, or in fraud of, the rights of the beneficiaries, and of which they have actual knowledge, or of facts from which knowledge must be imputed to them."

In that case we explained fully why such a rule could have no application to a constructive trust; but we had no occasion to speak of resulting trusts. In 26 R. C. L. 1215, it is said:

"A resulting trust, though by no means an express one, because not declared by the deed out of which it arises, approaches more nearly thereto than a constructive trust, in that it rests upon a presumed intention, whereas a constructive trust is supported by no such presumption, but is entirely in invitum, and

is raised and enforced by a court of equity, as a principle of justice."

What is this "presumed intention" upon which a resulting trust rests and which differentiates it from a constructive trust? Certainly nothing more than the presumption that the trustee intends to hold the property for the benefit of his cestui que trust, which presumption does not exist in the case of a constructive trust. This presumption that the intent of the trustee is to hold for the benefit of his cestui que trust continues until there is some act or deed on the part of the trustee evidencing a different intent, or, in other words, evidencing a repudiation of the intent which the law assumed existed. Therefore, in the case of a resulting trust, no statute of limitations can commence to run against the cestui que trust, and he cannot be held guilty of laches, until there has been a repudiation of the trust. As held in Lufkin v. Jakeman, 188 Mass. 528, 74 N. E. 933:

"If nothing appears to the contrary, the transaction itself implies a recognition of the rights of the equitable owner, and, in this respect, until repudiation, a resulting trust is like an express trust."

[5] Was there, in this case, any repudiation of the intent which the law presumes? We think not. Certainly the possession of the trustee during the life of the original cestui que trust could not be held to be adverse to her nor a repudiation of her rights. He did not deny her rights, but merely carried the idea that it mattered not where the title was, as the property would eventually all go to her children.

As said in Madison v. Madison, 206 Ill. 534, 69 N. E. 625:

"Laches is governed largely by the facts and circumstances surrounding each case. * * * The relationship of the parties, and the fact that they are members of the same family, has an important bearing on the question of laches, and a delay under such circumstances is not so strictly regarded as where they are strangers."

In Smith v. Smith, 132 Iowa, 700, 109 N. W. 194, 119 Am. St. Rep. 581, a case similar to this, the court said:

"The deceased quieted her [the cestui que trusts'] complaint by the assurance that he had arranged his affairs to protect her, and he doubtless intended to do so. He was in effect her trustee,

and the statute of limitations will not run against the trust until there has been some denial or repudiation of it by the trustee."

The following from the decision in Fawcett v. Fawcett, 85 Wis. 332, 55 N. W. 405, 39 Am. St. Rep. 844, is peculiarly applicable to this case:

"It is freely conceded that there are many authorities which, in general terms, assert the rule that the statute of limitations runs against all implied resulting, or constructive trusts. But it is apprehended that the court would fall into serious error were it to accept and apply that rule, without qualification, to all cases involving the enforcement of such trusts. The trust here sought to be enforced is not an express, but a resulting, trust. Yet it is enforceable only in equity, and the alleged trustee (plaintiff's husband), from the inception of the trust until he died, freely admitted, and never denied, the trust claimed, and never had any adverse possession of the property; for he and his wife always occupied it jointly as their homestead, and it does not appear that he ever asserted any interest in, or exercised any control of, the land, hostile to the trust here sought to be enforced. Thus we find in this resulting trust every element which operates to take an express trust out of the statutes of limitation, and prevents the statute from running against it until after the trust has been effectually repudiated. Under these circumstances it would be illogical to hold the resulting trust within the statute, and the express trust not within it. We do not believe the law makes any such imaginary distinction."

After the death of his wife, the possession of Radstaak was not adverse to plaintiffs. Radstaak, as the husband of the cestui que trust, became, on her death, a cotenant, and, as such, entitled to possession of all the land; and, as to the homestead, he was entitled to exclusive possession and use during his life. There is, however, evidence that, after his wife's death, Radstaak virtually conceded that plaintiffs had an interest in this land. There is absolutely no evidence that he ever claimed that they were not the owners of an interest therein.

[6] Plaintiffs were not guilty of laches. The statute of limitations did not commence to run against them until Radstaak died leaving a will purporting to dispose of all of the property in

his possession. Radstaak's possession was not adverse, and he therefore gained no title through same.

[7] Plaintiffs, as appellants, assign as error the refusal of the trial court to hold, as a matter of law from the facts found by it: (a) That Radstaak held all of the lands of which he died possessed, charged with a resulting trust in their favor to the extent of an undivided two-thirds interest therein; (b) that they were entitled to a decree quieting in them the title to all the property of Arend John Radstaak.

The first assignment is based on the claim that there existed, at the time of Radstaak's death, a resulting trust in plaintiffs' favor in and to a tract of land other than the 480 acres of land which the lower court held was charged with such a trust. The court found that this tract was purchased by Radstaak after his wife's death, but refused to find that it was purchased with funds derived from property belonging to his wife's estate, and refused to find that it was purchased with funds received by Radstaak from the operation of the lands that were held in trust by him. Such finding does not support the contention that Radstaak held this land charged with a resulting trust in plaintiffs' favor; and plaintiffs have not questioned the correctness of this finding.

[8, 9] Plaintiffs' second assignment of error rests on the contention that Radstaak entered into an enforceable agreement to will his property to plaintiffs. While there might be such conduct and assurances on the part of Radstaak as would excuse delay in bringing an action to quiet title to the property alleged to be held under a resulting trust, or as would prevent the running of the statute of limitations against such cause of action, such conduct or assurances might fall far short of creating an enforceable contract to will property. The trial court made a finding upon which plaintiffs base their contention that there was such an enforceable agreement. As to this finding, defendants have assigned insufficiency of evidence to support it. If the evidence fails, in material respects, to support such finding, we do not need to determine whether the finding as made would support the contention of plaintiffs. This finding is very long, and we will not attempt to quote same in full. In truth it was that, soon after the death of their mother, plaintiffs made a demand on Radstaak for a division of the property belonging to the

estate of their mother, but of record in the name of Radstaak, they claiming a two-thirds interest therein; that negotiations were had with such a division in view; that Radstaak did then agree that, if no action were taken by plaintiffs to have themselves declared owners of such interest in said property and of moneys in his hands, and if he was permitted to keep possession and handle said property during his life, he would make a will devising and bequeathing to plaintiffs "all the property of which he should die possessed;" that plaintiffs relied upon such agrement, and, to avoid expenses of litigation, maintain family harmony, and effect a settlement of family relations and property interests, they deferred the bringing of any action to declare "ownership of such premises and funds to be in the estate of Jane W. Radstaak, deceased."

The only evidence to support the above was that of two witnesses. One was a neighbor of Radstaak. He testified that, soon after Mrs. Radstaak's death, in the fall of either 1901 or 1902, he had a talk with Radstaak in reference to property affairs; that Radstaak said that the Hofteizer boys wanted to divide the Radstaak property, but he did not want it divided if he could help it, and that they wanted their share out of their mother's property; that he thought that Radstaak told him it was John Hofteizer with whom he talked; that he said he wanted to keep the property together while he lived and then "the boys" or "the Hofteizers" would get it, but that they wanted to get it at that time. The witness testified that he then said, "You tell them you are going to give it all to them when you die; you can put them off that way, and they won't bother you now;" that Radstaak told him that he intended to make Hofteizer his administrator; that, soon after this talk, witness saw Radstaak again, and Radstaak said that it was all right, the property was not going to be divided then; that Radstaak said he told John to let the property alone until he died, that the Hofteizers would get it all, and that John told him it would not be divided up anyway at that time; that later, about the year 1905, witness had another talk with Radstaak, and Radstaak told him he was making a will and that John Hofteizer was to be his administrator; that he spoke as though he had made some other will and had torn it up; that again, in 1907 or 1908, shortly before Radstaak went to Holland, they talked again; that he asked Radstaak if he had everything

fixed up before he took his trip; that Radstaak told him that he had made a will and that the administrator was John Hofteizer, but he was not positive whether Radstaak told him what he had done with his property.

The other witness testified that, some three years after Mrs. Radstaak's death, he had a talk with Radstaak in which Radstaak told him that the heirs (Hofteizers) were going to share alike, except that he did not know whether he would give Mrs. Onk a full share or not; that he asked Radstaak why he did not make a will then; that Radstaak said he had made a will and was going to give John Hofteizer $1,500 ahead of the rest because he would be administrator; and that Radstaak said, if he did not do that, they could go to law out of it—could make a whole lot of expense about it.

From the above it will be seen that there was no evidence from which the trial court could find that Radstaak ever entered into any binding agreement, and clearly no evidence from which it could be determined with any certainty as to what the agreement was if there were one. The heirs of Jane Radstaak, living at the time of these conversations were four sons and two daughters. There is nothing to connect any one of these six with the alleged negotiations and agreemnt except John. There is nothing to show that John ever agreed that he would never bring an action to quiet title; at the most, he may have said that they would not bring any then. There is no such clear and satisfactory evidence of an agreement as would warrant any court in decreeing title in these plaintiffs in and to property owned by Arend John Radstaak.

The judgment appealed from is in all things affirmed, and without costs on appeal to any party.