(No. 31313.—

ESTHER REMUS *et al.,* Appellees, *vs.* MARGARET SCHWASS *et al.,*—(MARGARET SCHWASS, Appellant.)

*Opinion filed March 22, 1950—Rehearing denied May 15, 1950.*

Brust & Pakenham, of Melrose Park, (Ode L. Rankin, of counsel,) for appellant.

Hadley & Leren, of Wheaton, (Charles W. Hadley, of counsel,) for appellees.

Mr. Chief Justice Thompson delivered the opinion of the court:

Appellees, Esther Remus and Mabel Schwass, children of John Schwass, herein referred to as plaintiffs, and R. B. Remus, husband of Esther Remus, filed suit against Margaret Schwass, widow of John Schwass, and persons incidentally interested, to partition two parcels of property located in the city of Elmhurst in Du Page County. A cross complaint was filed by Margaret Schwass to reform the deed to said John Schwass, by which he took title to parcel No. 2, hereinbelow described, so as to show Mar-

garet Schwass to have been a joint tenant therein with said John Schwass and hence owner thereof by survival. A decree was entered allowing partition of both pieces of property and dismissing the cross complaint.

A lien had been placed against said property by reason of a certain dramshop judgment in the sum of $6500, and plaintiffs, Esther Remus and Mabel Schwass, denied that they were liable for a portion of this judgment, claiming that it should be paid from the interest of Margaret Schwass. The cause was referred to the master who, after hearing the evidence, found for plaintiffs, except that he found they were *in pari delicto* with defendant Margaret Schwass as to the dramshop judgment. Objections to the master's report were overruled and a decree was entered dismissing the cross complaint for want of equity and granting partition and an accounting as to both parcels, subject to defendant's homestead rights and holding plaintiffs *in pari delicto* as to the dramshop judgment. Margaret Schwass has appealed from the decree, and Esther Remus and Mabel Schwass have taken a cross appeal from the portion of the decree ordering payment by each of them of one third of the dramshop judgment.

The facts, largely stipulated, are as follows: Margaret Schwass, defendant below, is the widow of John Schwass, who died intestate November 8, 1936. Plaintiffs are his daughters by a former marriage and, with the widow, are his sole heirs. The property in controversy consists of lots 20 and 21 in Struckman's West First Street Subdivision to the city of Elmhurst. Lot 20, referred to as parcel No. 1, is vacant and unoccupied. Lot 21, referred to as parcel No. 2, is improved with three buildings, a large frame building, a small stucco building and a brick garage. As to parcel 2, the following facts are undisputed: On October 18, 1921, John Schwass and Margaret Schwass, husband and wife, were occupying parcel 2. They used the

upper story and part of the lower in the frame building as their residence and John Schwass operated a tavern in the lower story. On that date they entered into a contract with Mary Schwass, John's mother, for the purchase of parcel 2. The pertinent part of that contract reads: "THE MEMORANDUM WITNESSETH that John Schwass and Margaret Schwass, his wife, as joint tenants, of the City of Elmhurst, Du Page County, State of Illinois, parties of the first part, hereby agree to purchase the following described real estate, to wit:" Then follows the description of parcel 2 and the agreement of Mary Schwass to sell for a total price of $12,000. The contract further reads: "The parties of the first part at the signing of this contract agree to and have paid the sum of Two Thousand ($2,000.00) dollars as a first payment on said total of Twelve thousand ($12,000.00) dollars." Then follows a schedule of payments and a provision that upon payment of $7000, the purchaser shall be entitled to a warranty deed to the premises, the balance to be secured by a first mortgage or trust deed payable within five years. There is no controversy over the execution of the contract by the contracting parties.

It is undisputed that the payments were made under the contract and that on March 1, 1923, Mary Schwass executed a warranty deed conveying parcel 2 to John Schwass, alone. This deed was recorded June 1, 1923. After the contract and deed, John and Margaret occupied the large frame building as their residence, and for the business, and such possession remained until John's death, November 8, 1936. Since his death, and until the filing of the instant action, Margaret has continued in possession of the premises, has operated the tavern and exercised complete and undisturbed control. During this period she made extensive repairs and improvements, and has neither accounted to, nor received contribution from, anyone in regard to such premises.

In 1937, after her husband's death, suit was filed under the Dram Shop Act (Ill. Rev. Stat. 1937, chap. 43, par. 135,) against all the parties. In that action the complaint charged the three contestants here as owners of parcel 2. Margaret in separate answer denied the allegation. Esther and Mabel admitted their ownership as tenants in common by inheritance from their father. The case proceeded to trial and judgment was rendered against all three. Thereafter, in 1938, Margaret, Esther and Mabel made a joint application for a loan from the Elmhurst State Bank in the amount of $11,000, offering parcels 1 and 2 for security. In the application, in answer to the question, "Actual cost of property to applicant," they stated, "Inherited." In answer to the question, "Title to the premises is in," they stated, "Margaret Schwass, widow, and Esther Remus and Mabel Schwass, heirs of John Schwass, deceased." The application stated that the purpose of the loan was to finance an appeal from the dramshop judgment, and was signed by all three. The loan was not made and no appeal was taken.

It also appears without dispute that Margaret Schwass, as administratrix of John's estate, filed her inventory in 1937, in which she listed parcels 1 and 2 as part of his estate. The estate was closed without disposition of either parcel, or disturbance of Margaret's possession of parcel 2.

On the hearing before the master, Esther Remus and her husband testified that shortly after John's death they talked to Margaret in regard to some repairs on the buildings on parcel 2 and offered to pay their share of the cost. On the hearing, Margaret Schwass testified that at the time the contract of 1921 was made she contributed $400 of her own money to the down payment and $90 a year thereafter from funds coming to her individually; that the later payments were made with money of hers and John's, which they kept in their residence; that the final payment of $3000 was paid with money obtained from a loan, for which she

and John gave their joint note; that the loan was repaid by another loan obtained under a trust deed in which she and John joined and which they repaid together.

An objection was made to this testimony under section 2 of the Evidence Act, (Ill. Rev. Stat. 1947, chap. 51, par. 2,) but it was admitted subject to the objection. No specific ruling was made by the master in his report and no specific objection was made to such report in that respect. However, part of this testimony was corroborated and, as to the payment, the contract itself, which was properly in evidence, shows $2000 was paid by the parties and it is unnecessary to consider the testimony objected to, as sufficient testimony was offered that defendant contributed substantially in the purchase of the property.

It was the contention of Margaret Schwass below that she had no knowledge of the contents of the 1923 deed until the action was filed; that it was always the understanding of herself and husband that they owned parcel 2 as joint tenants, with the right of survivorship, and that she was not aware of any claim adverse to that understanding.

The master found, in substance, and concluded, that the recording of the deed of 1923 was public notice to all, including the defendant; that the record title was in John Schwass; that the filing of her inventory in the estate of John Schwass in 1937 constituted direct notice to defendant of the state of the record title to parcel 2; that the dramshop proceedings constituted positive notice to defendant that plaintiffs were publicly considered part owners of parcel 2, and that the judgment rendered therein was conclusive of such ownership; that plaintiffs and defendant each own an undivided one-third interest in both parcels 1 and 2 as tenants in common, subject to the homestead rights of defendant Margaret Schwass.

Objections were filed to the master's report by both plaintiffs and defendant. The only objection of plaintiffs

was as to the finding of them *in pari delicto* as to the dramshop judgment. Defendant objected to all the findings on which the conclusions of the master were based. The master overruled the objections and recommended a decree for partition and ·accounting in accordance with the findings made. The objections were allowed to stand as exceptions and were overruled and a decree entered dismissing defendant's cross complaint for declaration of her equitable ownership and for reformation of the 1923 deed, and granting partition and an accounting in accordance with the master's recommendation, subject to the homestead rights of the defendant Margaret Schwass, to be set off, each share to contribute one third to such homestead right.

Appellant, Margaret Schwass, urges error in the dismissal of her cross complaint, and in the granting of partition and an accounting as to parcel 2. She also contends there was error in the holding that her share should contribute one third of the homestead right to be set off to her. Cross appellants urge error in the finding below that they were *in pari delicto* under the dramshop judgment. The crucial question thus appears as to whether it was error to dismiss the cross complaint of Margaret Schwass and deny reformation of the deed of 1923.

Appellant first contends that under the contract of October 18, 1921, she was entitled to a joint-tenancy deed from Mary Schwass in accordance with the terms of the contract of purchase. In support of her contention appellant cites *Forthman* v. *Deters,* 206 Ill. 159, where, at page 173, the rule is stated to be that from the time of a contract for the sale of land, the vendor, as to the land, becomes trustee for the vendee, and the vendee, as to the purchase money, becomes trustee for the vendor. To the same effect is *Fuller* v. *Bradley,* 160 Ill. 51, *Waggoner* v. *Saether,* 267 Ill. 32, and *Wahl* v. *Fairbanks,* 405 Ill. 290.

The controversy arises first as to the effect of the language of the contract. Appellees cite *Porter* v. *Porter,*

381 Ill. 322, *Cooper* v. *Martin,* 308 Ill. 224, *Gaunt* v. *Stevens,* 241 Ill. 542, and *Mustain* v. *Gardner,* 203 Ill. 284. Due to the dissimilarity of the language, these cases are not controlling. This question, on closely analogous contractual language, was presented in the recent case of *Wahl* v. *Fairbanks,* 405 Ill. 290, wherein it was stated, "Under the rulings of this court in the cases of *Engelbrecht* v. *Engelbrecht,* 323 Ill. 208, and *Shipley* v. *Shipley,* 324 Ill. 560, the contract of April 1, 1927, would appear to contain sufficient words of intention to indicate that Edward Wahl and Ida Wahl were to take the property as joint tenants and not as tenants in common, even though said wording was not in the exact wording of the statute." It would seem the *Wahl case* and its supporting authority controls this question and the contract here requires Mary Schwass to convey in joint tenancy.

As to this, appellees contend that any rights that appellant might have had under the language of the contract cannot be asserted here because there is no evidence that she contributed to the payment of the purchase price of parcel 2. It will be observed that the contract on its face recites that "The parties of the first part at the signing of this contract agree to and have paid the sum of Two Thousand ($2,000.00) dollars as a first payment \* \* \*." The evidence discloses that a witness testified that at appellant's request he loaned her and her husband $3000, with which to pay off the contract. The evidence seems to be sufficient to establish clearly that appellant participated in the payment of the contract price and that the purchase price was paid through the joint efforts and contributions of both appellant and her husband. In this respect the cases cited by appellees in opposition to this theory are not in point.

Appellees also strenuously urge that there is no evidence of mistake here upon which reformation of the 1923 deed could rest. This contention seems unfounded in view of

the stipulation that the purchase of parcel 2 was made under the terms of the 1921 contract, which clearly expresses the intention of all the parties thereto that the deed to be made should be in joint tenancy. The record disclosing complete payment, the contract bound all parties and the conveyance in violation thereof to John Schwass alone was a violation of the trust imposed upon the grantor by the contract. (Ill. Rev. Stat. 1949, chap. 76, par. 1a; *Wahl* v. *Fairbanks,* 405 Ill. 290.) The question here obviously does not turn on the question of mistake in the preparation of the deed, but upon the effect of that deed as a violation of a trust imposed by the contract. We also might observe at this time that appellant and her husband, John, were in possession of the premises in question in 1921, when the contract was made and continued in such possession without controversy or change in position as to their rights until John's death in 1936. The relationship between them was husband and wife, and the premises were used as their residence as well as for the operation of the tavern business. As between parties standing in intimate personal relationship with each other, great leniency is indulged in the application of the doctrine of *laches*. (*Lutyens* v. *Ahlrich,* 308 Ill. 11; *Ryder* v. *Emrich,* 104 Ill. 470.) Nothing appears here invoking the doctrine of *laches* as between appellant and her husband up to the date of his death.

Appellees urge that after the death of John Schwass, appellant, as administratrix of his estate, filed her inventory in which she listed this property as part of the estate, and that this constituted direct notice to her of the state of the record title and required her assertion of the equitable right claimed to prevent the application of *laches*. It is true that inventories are competent evidence against the one making them as tending to prove what property was owned by the estate. (*Monroe* v. *Becker,* 283 Ill. 42; *Bailey* v. *Robinson,* 233 Ill. 614.) Appellant's position is

that although she made the inventory, it does not bar her assertion of her equitable rights. No authority is cited, but we find in the case of *Madison* v. *Madison,* 206 Ill. 534, a wife claimed a resulting trust in certain property and inventoried that property as part of her husband's estate while she was acting as his conservatrix. After his death she asserted her claim and it was held that the inventory did not bar the assertion of the equitable claim after her husband's death when no rights of third parties were prejudiced thereby. In the instant case no rights of third parties are involved and the last-cited case would seem to control.

It is also contended that the dramshop judgment was a conclusive adjudication of the question of title, and that the judgment worked an estoppel by verdict against the equitable claim presented by the appellant here. A number of cases are cited by the appellees but they are not decisive of this situation. An analysis of the record discloses that in the dramshop action the answers filed by appellant and appellees were both addressed to the allegations of the complaint filed there and do not purport to controvert any question of equitable ownership as between them, and no adjudication of such issue was made. The parties to the instant case were on the same side in the dramshop case. The rule is that parties on the same side of litigation are not bound by a judgment or decree in subsequent controversies between them respecting their rights, unless they have formed or contested an issue respecting the same and the judgment or decree has determined such rights. (*Jones* v. *Koepke,* 387 Ill. 97, and cases there cited.) We are of the opinion the appellant here is not barred from asserting her equitable claim.

As we have heretofore pointed out, the appellant, from before the date of the 1921 contract until her husband's death in 1936, jointly occupied the premises in question with him. She remained in sole and undisputed control of

the property until the filing of the complaint in this action in 1946. No rights of third persons have intervened to affect her equitable claim. It appears that part of the increase in value of the property was due to extensive improvements made by her. We have held that peaceable possession by an equitable owner is notice to all the world of his equitable rights and he need not assert them until occasion arises for him to do so. *Crowley* v. *Methodist Book Concern*, 323 Ill. 215; *Schroeder* v. *Smith*, 249 Ill. 574.

We have examined the cases pertaining to whether appellant was in possession as a tenant in common and find that her equitable right to legal title as survivor of John Schwass is valid. However, a judgment was rendered in a dramshop action against Margaret Schwass, cross appellee, as operator of the tavern, and against cross appellants and Margaret Schwass, as owners. In this situation, the judgment stands against all of them, as well as a lien enforceable against the property in which the tavern was located. Margaret Schwass, as equitable owner, by converting her equity into legal title, takes subject to the lien of the dramshop judgment. We are of the opinion, also, from the evidence as disclosed by the record, that the judgment which stands against all of the parties should, in equity and good conscience, fall upon the party whose acts resulted in such judgment, and that Margaret Schwass should satisfy and remove such judgment from the record within a period of 30 days from the date of the decree of the lower court on the cross complaint, which is a condition to be performed before her equitable title is converted to her as a legal title, either by the parties or the master executing a deed, as ordered by the court, within a time fixed for such performance.

We held in the case of *Pure Oil Co.* v. *Byrnes*, 388 Ill. 26, that "the court has the power to protect the equitable rights of both parties, and, if it sees fit, to give affirmative

relief to the defendant by enforcing an equitable claim. (19 Am. Jur. 283, par. 412.) A court of chancery may, in its discretion, impose equitable terms on which relief will be granted, (*Galbraith* v. *Tracy,* 153 Ill. 54,) even though there be no demand therefor. (30 C.J.S. 994.)"

We have made a careful examination of this record and the exhaustive briefs on questions raised at every step of the proceeding in the trial court and have come to the conclusion that under the 1921 contract between Mary Schwass, as vendor, and John and Margaret Schwass, as purchasers, the vendor held title to parcel 2 in trust for the purchasers as joint tenants, subject to their performance of the contract. Upon the payment of the purchase price under the contract, Mary Schwass was under a duty to convey to John and Margaret Schwass as joint tenants. Her violation of that duty by conveyance to John Schwass, alone, impressed upon him the character of trustee and imposed upon him a duty to convey to Margaret Schwass in accordance with their contract. The equitable right resulting in Margaret Schwass is not barred by *laches,* not concluded by the dramshop proceedings, nor affected by descent of the legal title to John Schwass's heirs upon his death.

After careful consideration of the many controversial questions raised in this proceeding, we are of the opinion it was error to dismiss the cross complaint. The decree, therefore, as rendered below, is reversed, except as to the partition of parcel 1, and the lien of the judgment in parcel 2, which is affirmed. The cause is, therefore, remanded with directions to reinstate the cross complaint and to enter a decree not inconsistent with the views herein expressed.

*Affirmed in part and reversed in part*
*and remanded, with directions.*