In the Matter of the Estate of Leon Jarodsky, Deceased. Mary Jarodsky, Claimant-Appellee, v. Citizens National Bank of Paris, Administrator-Appellant.

Gen. No. 11,116.

Fourth District.

May 4, 1970.

George V. Dole, of Paris, for appellant.

Roger Fruin and Carl A. Lund, Fruin & Lund, of Paris, for appellee.

JONES, J.

Defendant, administrator of the estate of Leon Jarodsky, deceased, appeals from an Order of the Circuit Court partially approving the claim of Petitioner, Mary. Jarodsky, against decedent's estate.

The facts disclose that Leon and Mary Jarodsky were married in 1937. It was his second marriage and he had two daughters by a previous marriage. Mr. Jarodsky engaged in a real estate business in which he bought, sold and rented properties in Edgar County, Illinois, and Vermillion County, Indiana, during the years 1943 to 1956. In those years thirty-six parcels of real estate were acquired, in four of them Leon Jarodsky was the sole grantee and in thirty-two of them Leon Jarodsky and Mary Jarodsky were the grantees. In the latter years of this operation, and culminating in 1956, the real estate properties were converted to cash and the proceeds deposited in banks in St. Louis, Missouri, in five savings accounts, three in the name of Leon Jarodsky, sole, and two in the names of Leon and Mary Jarodsky, jointly. In 1956, decedent withdrew $35,000 from the St. Louis bank accounts for use in purchasing two theater properties in Paris, Illinois, the deeds to which conveyed title to Leon Jarodsky, sole. The theaters were operated by decedent until his death intestate in 1966. Mary Jarodsky assisted in the operation of the theaters by taking tickets, cleaning, etc.

Appellant was appointed administrator of the decedent's estate. The attorney for the administrator was Ward Dillavou who also had served as attorney for dece-

dent for many years prior to his death. The administrator filed an inventory which listed the two theater properties in Paris, Illinois, as being the sole property of the decedent. The widow, Mary Jarodsky, asserting that the real estate business was a joint operation of herself and decedent, and that one-half of the profits therefrom were hers, filed her Amended Statement of Claim against the estate of her deceased husband in three counts, one based on an alleged contract, another for declaration of a resulting trust, and the third for declaration of a constructive trust. The Defendant administrator filed an answer and an affirmative defense of laches. One of the decedent's daughters, with leave of court to intervene, filed an answer.

The attorney for the administrator, in anticipation of being a witness at the hearing on the claim, withdrew and special counsel was appointed to represent the administrator in defending against the claim.

After a hearing the trial court found that the real estate business had been operated as a partnership of Leon Jarodsky and Mary Jarodsky; that the net profits of the partnership business, plus interest earned, was $30,023.40; that Mary Jarodsky's share of $15,011.70 represented 42.88% of the total deposits in the St. Louis bank accounts and accordingly 42.88% of the $35,000 withdrawn for purchase of the Paris theater properties was her money and was used for the investment. The court further found that the fair cash market value of the two theaters was $42,500; that Mary Jarodsky had proven her claim, based upon a resulting trust; that 42.88% of the value of the theaters is $18,224, for which amount the claim was approved, to be paid in due course of administration. Defendant administrator appealed but was not joined by the daughter of the decedent.

 It has been frequently stated by Illinois courts that where the purchase money for land is paid by one person and the title conveyed to another the law con-

strues such facts to constitute a resulting trust. As stated in Baughman v. Baughman, 283 Ill 55, 119 NE 49:

> " 'A resulting trust does not arise from or depend upon any agreement between the parties. Its very name implies that it is independent of any contract and is raised by the law itself upon a particular state of facts. It results from the fact that one man's money has been invested in land and the conveyance taken in the name of another. It is immaterial whether the purchase was made and the money paid by the trustee or the cestui que trust. This may be done by either without the knowledge of the other. No matter how or by whom done, if the fact exists,—if it was done at all,—by mere operation of law a trust is raised in favor of the party whose money was used to purchase the land, either to the whole or his equivalent portion of the land.' (Bruce v. Roney, 18 Ill 67.) Such a trust also 'results in favor of one who pays only a part of the price. In other words, where two or three persons together advance the price and the title is taken in the name of one of them, a trust will result in favor of the other with respect to an undivided share of the property, proportioned to his share of the price.' 3 Pomeroy's Eq Jur sec 1038; Hinshaw v. Russell, 280 Ill 235." See also West v. Scott, 6 Ill2d 167, 128 NE 2d 734; Wright v. Wright, 2 Ill2d 246, 118 NE2d 280; Craven v. Craven, 407 Ill 252, 95 NE2d 489.

Where a man pays for land and causes it to be conveyed to his wife or child the presumption is that it was intended as a gift or advancement. Reed v. Reed, 135 Ill 482, 25 NE 1095. The reasons for so holding do not apply, however, where the wife pays for the land and causes it to be conveyed to her husband. Wright v. Wright, supra. The burden of proof rests upon the party seeking to establish a resulting trust, and the evidence to be effective

for this purpose must be clear, convincing, unequivocal and unmistakable and must establish beyond a doubt the payment by the claim beneficiary at the time the title was taken in the alleged trustees. Baughman v. Baughman, supra; Heineman v. Hermann, 385 Ill 191, 52 NE2d 263; West v. Scott, supra.

In this case the trial court found that the consideration furnished by the claimant for part of the purchase price of the Paris theater properties came from her share of the profits of the real estate business which had been deposited in the St. Louis bank accounts. Claimant's evidence of the partnership and of the profits therefrom was based in principal part upon purported books of account of decedent containing financial records of purchases, sales and rentals of real estate properties over an eleven year period. Defendant strenuously objected at the trial to the books of account being admitted into evidence and asserts here that their admission was error and requires reversal, there being no other sufficient evidence of a partnership nor of any interest of claimant in the St. Louis bank accounts. In its order approving the claim, the trial court expressly found that the record books of account submitted by the claimant into evidence (Exhibits 1 through 11) were admissible as record books of a partnership between decedent and claimant and that the record books were largely in the handwriting of decedent and are books of account admissible into evidence. Over objections of defendant administrator, claimant testified on direct examination that the exhibits "are the books that my husband kept each year for the real estate and for taxes and for equipment that he bought and sold, that the books were kept by decedent and his employees, that claimant had occasionally written in the books herself and that what she wrote was as instructed by the decedent." Called as a witness by claimant, Attorney Dillavou testified that he had been attorney for the decedent for many years, could recognize his hand-

248

writing, and identified a large portion of the handwriting in the exhibits as being that of decedent, including the following entry which was made at the top of page one of claimant's Exhibit 1: "All real estate operation is partnership Leon & Mary Jarodsky joint title & bank acct." Another witness called by claimant was an employee of an accounting firm who did work for decedent from 1946 to 1948, who testified that a Mr. McKnight, deceased at the time of the trial, had been an accountant employed by the same firm and that an entry on page twenty-one of Exhibit 2 was in the handwriting of Mr. McKnight. That entry was undated and was headed "partnership—Leon and Mary Jarodsky." The entry was a summary of the capital contributions of Leon and Mary to the partnership and shows that the total partnership investment was $7,200 and that each of the partners had contributed, at different times and in different amounts, one-half thereof. The last notation on that page was "bank account is jointly owned."

Claimant was incompetent to testify to any transactions between herself and decedent because of Section 2 of the Evidence Act (c 51, § 2, Ill Rev Stats). It is Defendant's contention that there was insufficient foundation laid to permit the record books to be admitted into evidence pursuant to section 3 of the Evidence Act (c 51, § 3, Ill Rev Stats). Defendant argues that claimant made no showing that the books of account were original entries, made by decedent in the usual course of business, and true and correct, as required by the statute and cases such as Rude v. Seibert, 22 Ill App2d 477, 161 NE2d 39; National Malleable Castings Co. v. Iroquois Steel & Iron Co., 333 Ill 588. It is true, as Defendant contends, that if the account books had been those of the claimant the foundation proof was insufficient to justify admitting the books into evidence. However, that thrust of Defendant's argument overlooks the fact that the account books in question are not those of

the claimant-witness, but those of decedent. The claimant testified that the account books were those of the deceased and kept by him each year in the real estate business and identified much of the handwriting as decedents. Her testimony in that regard was properly admitted. In re Weiss' Estate, 299 Ill App 620, 20 NE2d 177; People v. Lefens' Estate, 269 Ill 472, 109 NE 965. In addition to the foundation testimony of the claimant, Attorney Dillavou testified to the profusion of entries in the account books in the handwriting of the decedent. Under these facts we deem it immaterial whether sufficient foundation was laid to admit the books under section 3 of the Evidence Act, or whether the books would be admissible under Supreme Court Rule 236. The books were properly shown to have been those of the decedent, they were replete with his handwritten entries made over a span of eleven years of real estate business, they contained in his writing a statement that there was a partnership of himself and claimant, they contained in the writing of an employee an explicit statement of a partnership showing the capital contributions of the partners. The fact that some of the entries in the books were made by decedent's employees and some by the claimant in nowise rebuts the presumption that the books were those of the decedent and admissible in evidence as admissions binding on him and his estate. People v. Lefens' Estate, supra; Weigle v. Brautigam, 74 Ill App 285. Defendant's contention that the statement of partnership by decedent and his employee could have been spuriously made after decedent's death is belied by the jaded appearance of the statements, as much so as the remainder of the books in which they were contained. We believe the trial court was correct in admitting into evidence the books of account as an admission of decedent and we note, as the trial court must have done, that Defendant offered no evidence to show that the account books were incorrect, incomplete, ingenuine, or in

fact, anything other than that which they appear to be, the books of account of decedent. The trial court was correct in admitting the books of account into evidence and in finding that the real estate business was a partnership of decedent and claimant, that one-half the profits therefrom were claimants and that when decedent used claimant's funds in purchasing the theater properties in his own name, a resulting trust arose pro tanto, in favor of claimant.

■■■■■■ Defendant also argues that the claim of petitioner should be defeated by laches, pointing out that the theater properties were acquired by decedent in his own name in 1956 and that claimant made no effort to assert her interest until after the death of decedent. It is asserted that by the one act of acquiring the theater properties in his own name Leon Jarodsky stripped his wife of substantially all of her funds and it should be expected that she would have at once set about redressing such a grievous wrong. While defendant shows that there had been a ten-year lapse of time in which the claimant could have maintained an action for an interest in the theater properties during her husband's lifetime, no evidence whatsoever was offered to show that claimant's delay had any adverse effect or prejudice upon the rights of the estate or anyone concerned. No rights of third persons have intervened. Laches depends on the facts of each case, and no simple yardstick can be devised by which a plaintiff's diligence can be measured. The fact that a family relationship existed, with consequent hesitation to litigate, is a proper matter to be considered on the issue of laches. Urban v. Brady, 86 Ill App 2d 158, 230 NE2d 65. Claimant and Leon Jarodsky remained husband and wife and resided together as such from the time of his acquisition of the theater properties until his death. As between parties standing in intimate personal relationship with each other, great leniency is indulged in the application of the doctrine of laches.

Remus v. Schwass, 406 Ill 63, 92 NE2d 127; Lutyens v. Ahlrich, 308 Ill 11, 139 NE 50; Ryder v. Emrich, 104 Ill 470.

Nothing appears in the record of this case that would require petitioner's claim to be barred by laches.

For the foregoing reasons the order of the trial court allowing plaintiff's claim will be affirmed.

Affirmed.

CRAVEN, P. J. and TRAPP, J., concur.